```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN A. MESKUNAS, DENISE MESKUNAS,          :
and IMPORTANT PROPERTIES, LLC,              :
                    Plaintiffs,             :
                                            :       OPINION AND ORDER
v.                                          :
                                            :       17 CV 9129 (VB)
LEE DAVID AUERBACH, ESQ., and LEE           :
DAVID AUERBACH, P.C.,                       :
                    Defendants.             :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiffs John A. Meskunas ("John"), Denise Meskunas ("Denise"), and Important Properties, LLC ("Important"), sue defendants Lee David Auerbach, Esq. and Lee David Auerbach, P.C., alleging defendants, acting as plaintiffs' counsel and as Important's court-appointed receiver, improperly diverted approximately $250,000 from rent payments made to Important.

Before the Court is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #24).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

1

John and Denise allege they control Important, a limited liability company formed in 2004 to purchase, own, and operate commercial real estate located at 8 Industrial Lane in New Rochelle, New York (the "property"). Important owned the property subject to a $5.5 million, 25-year, self-amortizing mortgage (the "mortgage") on which Important allegedly made monthly payments of $35,444.48. Until 2012, non-party JPMorgan Chase Bank ("JPMorgan") held the mortgage.

The property houses a Harley Davidson Motorcycle dealership. From September 2004 through February 2012, non-party New Roc Motorcycles, LLC ("New Roc"), operated the dealership pursuant to a lease with Important. In February 2012, New Roc sold the dealership to non-party Peter Friend Motorcycles, LLC, doing business as Empire Harley Davidson ("Empire"). Empire allegedly took over the dealership pursuant to a 10-year lease with Important, paying monthly rent of approximately $35,000, subject to annual three-percent increases. Plaintiffs allege Empire's monthly payments fully funded Important's mortgage payments and also generated unspecified profits for Important in the lease's second and subsequent years.

In March 2012, John and Denise began "contentious marital litigation" in Westchester Family Court and Supreme Court, Westchester County. (Doc. #23 ("Am. Compl.") ¶ 19). Those proceedings concerned, among other things, dissipation of the Meskunases' marital assets. Denise—both individually and as Important's principal—allegedly retained defendants to represent her in the marital litigation. Defendants' representation allegedly included handling Empire's rent payments to Important, as well as Important's mortgage payments. The amended complaint alleges defendants continuously represented Denise and Important "[f]rom the date of [defendants'] retention through and including approximately November 21, 2014." (Id. ¶ 32).

In March 2012, the Family Court appointed defendants to serve as receiver and custodian of Important's rent payments from Empire. According to the amended complaint, the Family Court directed defendants to apply Empire's rent payments "solely and exclusively" to Important's mortgage payments. (Am. Compl. ¶ 21). In July 2012, the Supreme Court, Westchester County, allegedly ordered this arrangement to continue until it ordered otherwise. Accordingly, defendants allegedly began receiving Empire's rent payments to Important. However, instead of using the money from Empire's rent payments to make Important's mortgage payments, defendants allegedly diverted Empire's rent money into defendants' own account or paid the rent money to unspecified third parties.

Plaintiffs allege they began demanding in June 2012 that defendants use Empire's rent payments to pay Important's mortgage payments, in accordance with the Family Court and Supreme Court's orders. Defendants allegedly failed to do so. According to the amended complaint, defendants decided not to make Important's mortgage payments "based on the[ir] frivolous conclusion" that the property's value had significantly decreased, and that the property could generate a profit only if Important defaulted on the mortgage. (Am. Compl. ¶ 26).

Defendants' decision to stop making Important's mortgage payments allegedly caused Important to default. Starting in June 2012, JPMorgan sent plaintiffs multiple notices to cure. Plaintiffs allege defendants did not cure Important's default.

In December 2012, JPMorgan allegedly assigned the mortgage to nonparty Colfin Metro Funding, LLC ("Colfin"). Colfin accelerated the mortgage in January 2013, and in June 2013 began foreclosure proceedings against Important—as well as against John and Denise as the mortgage's personal guarantors—in Supreme Court, Westchester County. In June 2014, the

Supreme Court granted summary judgment in Colfin's favor. The property was then scheduled to be sold at auction.

In January 2015, before the property could be sold, Important declared Chapter 11 bankruptcy, triggering an automatic stay of the auction. As required by the Bankruptcy Code, see 11 U.S.C. § 521(a)(1)(B)(i), plaintiffs filed in Bankruptcy Court a schedule listing Important's "personal property."[1] (Doc. #25 ("Schillinger Decl."), Ex. G at 4–6). That schedule did not list any of Important's claims against defendants in the instant case. Important ultimately sold the property for $6.5 million in November 2016, after which Important's bankruptcy proceeding was closed.[2]

According to plaintiffs, defendants received a total of approximately $258,000 in rent payments that defendants should have applied to Important's mortgage payments. At the same time, defendants allegedly diverted more than $250,000 to themselves in the form of attorneys' fees and expenses. Plaintiffs also allege defendants have refused multiple demands for an accounting of the funds they received and paid as Important's court-appointed receiver.

Plaintiffs allege Important's default on the mortgage, caused by defendants' conduct as receiver, resulted in plaintiffs losing at least $2.5 million in equity in the property; at least $10 million in additional equity in the property that would have accrued over the Empire lease's ten-year term; and at least $5.5 million in further equity in the property that would have accrued had

---

[1] The Court takes judicial notice of the Bankruptcy Court schedule as a public record. See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).

[2] The amended complaint inaccurately states the bankruptcy proceeding was dismissed. (See Am. Compl. ¶ 33). In fact, the Bankruptcy Court confirmed Important's Chapter 11 Liquidating Plan and then closed the case. See generally In re Important Properties, LLC, No. 15-22123-rdd (Bankr. S.D.N.Y.).

Important not defaulted. John and Denise also claim defendants exposed them to "significant liability" as the mortgage's personal guarantors, allegedly causing them to spend at least $300,000 in legal fees. (Am. Compl. ¶ 38).

All plaintiffs assert state-law claims for breach of fiduciary duty, fraud, and conversion; Denise and Important assert state-law claims for legal malpractice and breach of contract; and all plaintiffs also seek an accounting. On all but the accounting claim, plaintiffs seek compensatory damages of $17.5 million.[3]

## DISCUSSION

I. Standard of Review

Defendants seek dismissal of Important's claims pursuant to Rule 12(b)(1), and of all plaintiffs' claims pursuant to Rule 12(b)(6).

A. Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). A cause of action "is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)), including when the plaintiff lacks standing to pursue the claim, Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir.

---

[3] Plaintiffs have withdrawn Count VII of the amended complaint, styled a claim for breach of a court order. (See Doc. #33 at 22).

5

2006). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court typically should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). Constitutional standing "ordinarily should be determined before reaching the merits"; however, "statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." Coan v. Kaufman, 457 F.3d 250, 256 (2d Cir. 2006) (citations omitted).

B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, a complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).[4]

## II. Duplicative Claims

Defendants contend plaintiffs' fraud, breach of contract, and accounting claims should be dismissed as duplicative of Denise and Important's claim for legal malpractice.

The Court agrees as to the claims for fraud and breach of contract but disagrees as to the claim for an accounting.

Under New York law, "[t]he key to determining whether a claim is duplicative of one for malpractice is discerning the essence of each claim," without regard for each claim's label.

---

[4] In assessing defendants' arguments under Rule 12(b)(1), the Court properly considers evidence outside the pleadings. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016) (citations omitted). However, in assessing defendants' arguments under Rule 12(b)(6), the Court properly considers only the amended complaint's factual allegations and exhibits, matters subject to judicial notice, documents integral to the amended complaint, and documents incorporated into the amended complaint by reference. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citation omitted); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

Both parties have submitted as exhibits materials extrinsic to the pleadings and thus not properly considered on a Rule 12(b)(6) motion. (Doc. #24 ("Schillinger Decl."), Exs. C, F, I; Doc. #34 ("Halperin Decl."), Exs. A–E). Neither party has asked the Court to convert defendants' Rule 12(b)(6) motion to a motion for summary judgment, see Rule 12(d), and the Court sees no reason to do so. Accordingly, the Court considers the parties' extrinsic submissions solely for purposes of assessing defendants' arguments under Rule 12(b)(1) and excludes those materials for purposes of resolving defendants' arguments under Rule 12(b)(6).

Johnson v. Proskauer Rose LLP, 129 A.D.3d 59, 68 (1st Dep't 2015) (citations omitted). This general principle dictates that a cause of action must be dismissed as duplicative of a malpractice claim if both "are premised on the same facts and seek identical relief." Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 63 (E.D.N.Y. 2010) (quoting Joyce v. Thompson Wigdor & Gilly LLP, 2008 WL 2329227, at *14 (S.D.N.Y. June 3, 2008)) (citations omitted). Duplicative claims are subject to dismissal. See, e.g., Roy v. Law Offices of B. Alan Seidler, P.C., 284 F. Supp. 3d 454, 457–58 (S.D.N.Y. 2018) (citations omitted) (dismissing duplicative breach of contract claim); Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002) (citation omitted) (dismissing duplicative fraud claim).

    A.    Fraud

The Meskunases' fraud claims are duplicative.

Under New York law, a fraud claim "asserted in connection with charges of professional malpractice" is non-duplicative "only to the extent" it arises from "one or more affirmative, intentional misrepresentations" that caused damages "separate and distinct from those generated by the alleged malpractice." Lemon v. Hollinger, 2017 WL 6547741, at *5 (S.D.N.Y. Dec. 19, 2017), reconsideration denied, 2018 WL 3231665 (S.D.N.Y. May 14, 2018) (quoting Decker v. Nagel Rice LLC, 2010 WL 2346608, at *4 (S.D.N.Y. May 28, 2010)).

Plaintiffs' allegations of fraud and malpractice are substantially the same. Plaintiffs allege defendants promised to provide competent legal representation but failed to do so. The amended complaint does not plausibly allege fraudulent conduct distinct from defendants' alleged malpractice, and the fraud and legal malpractice claims seek identical damages.

Accordingly, plaintiffs' fraud claims are dismissed.

B.     Breach of Contract

The breach of contract claim likewise duplicates the claim for legal malpractice.

In a case in which the plaintiff also sues for legal malpractice, a breach of contract claim is duplicative under New York law when it alleges "only a breach of general professional standards," rather than a broken "promise of a particular or assured result." O'Shea v. Brennan, 2004 WL 583766, at *11 (S.D.N.Y. Mar. 23, 2004) (internal quotation marks and citations omitted). In other words, "[a]n action for breach of contract in an attorney-client relationship may be maintained separately from a malpractice action only where the attorney has undertaken to perform a specific task and failed to do so." Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 376 (S.D.N.Y. 2004), amended on reconsideration, 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004).

The essence of the contract claim arises from defendants' conduct as Denise and Important's legal representative, not an unfulfilled promise or failure to deliver an assured result. Plaintiffs "allege only that [defendants] entered into a contract to provide professionally competent services and to exercise applicable standards of care, loyalty and honesty, and instead provided [plaintiffs] with advice [defendants] either knew or should have known to be wrong." Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d at 376–77. A breach of contract claim premised on such allegations duplicates a claim for legal malpractice. See id. Moreover, the allegations underlying the contract and malpractice claims—that defendants failed to provide competent legal representation—as well as the damages sought on those two claims—compensatory damages of $17.5 million—are the same.

The breach of contract claim therefore is dismissed.

C.     <u>Accounting</u>

Lastly, the claim for an accounting plainly seeks relief different from the amended complaint's other claims and thus is not duplicative. Defendants do not offer any other reason why this claim should be dismissed. Accordingly, the accounting claim survives dismissal.

III.     <u>Untimely Claims</u>

Defendants contend plaintiffs' breach of fiduciary duty, conversion, and legal malpractice claims must be dismissed as untimely.

The Court agrees as to the breach of fiduciary duty and conversion claims but disagrees as to the claim for legal malpractice.

A.     <u>Breach of Fiduciary Duty</u>

Plaintiffs' claims for breach of fiduciary duty are time-barred.

Under New York law, "[a] claim for breach of fiduciary duty generally accrues at the time of breach." <u>Speedfit LLC v. Woodway USA, Inc.</u>, 53 F. Supp. 3d 561, 581 (E.D.N.Y. 2014) (citing <u>Malmsteen v. Berdon, LLP</u>, 369 F. App'x 248, 249–50 (2d Cir. 2010) (summary order)). "New York law does not provide a single . . . limitations period for a breach of fiduciary duty claim. Instead, the applicable limitations period depends upon the substantive remedy sought." <u>Malmsteen v. Berdon, LLP</u>, 477 F. Supp. 2d 655, 666 (S.D.N.Y. 2007) (citation omitted). A three-year limitations period governs most breach of fiduciary duty claims seeking monetary relief; when a plaintiff seeks equitable relief, a six-year limitations period applies. <u>Id</u>. (citation omitted). Notwithstanding, a six-year limitations period applies to a "breach of fiduciary [duty] cause of action based on actual fraud or a breach of contract, even [if] seeking monetary damages." <u>Id</u>. (citations omitted). But "if the fraud allegation is only incidental to the

claim asserted," the three-year limitations period applies. Cusimano v. Schnurr, 137 A.D.3d 527, 529 (1st Dep't 2016) (quoting Kaufman v. Cohen, 307 A.D.2d 113, 119 (1st Dep't 2003)).

To assess whether an alleged fraud is "only incidental," courts examine "the 'gravamen' of the claims," Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 397 (E.D.N.Y. 2018) (citation omitted)—meaning "the reality, and the essence of the action and not its mere name," Cusimano v. Schnurr, 137 A.D.3d at 529 (quoting Kaufman v. Cohen, 307 A.D.2d at 118). A fraud is not incidental—and thus triggers the longer, six-year statute of limitations— "only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim." Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d at 397 (quoting Corcoran v. N.Y. Power Auth., 202 F.3d 530, 545 (2d Cir. 1999)) (citation omitted).

Here, the three-year statute of limitations applies. Plaintiffs' breach of fiduciary duty claims seek money damages—namely, compensatory damages of at least $17.5 million. Moreover, the breach of fiduciary duty claims do not arise from defendants' alleged breach of contract or from a fraud that is not merely "incidental" to plaintiffs' other claims.

First, the breach of fiduciary duty claims are not premised upon plaintiffs' allegations sounding in contract. Indeed, the breach of fiduciary duty claims are "premised upon different conduct than [Denise and Important's] malpractice claim": plaintiffs allege defendants, upon being appointed Important's receiver, "entered into a fiduciary relationship" with plaintiffs separate and apart "from simply providing advice and consultation as the lawyer to Denise Meskunas and Important, LLC." (Doc. #33 ("Opp. Br.") at 17). Defendants' alleged breach of fiduciary duty thus arises not from a contractual relationship, but rather from defendants' role and responsibilities as a court-appointed receiver.

11

Second, assuming for argument's sake that plaintiffs' breach of fiduciary duty claims arise from an alleged fraud, such a fraud is merely "incidental" to plaintiffs' fiduciary claims, rendering those claims subject to the shorter, three-year statute of limitations. Plaintiffs do not allege defendants' purportedly fraudulent conduct caused any injury "distinct from the injuries caused by the alternate claim[s]." Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d at 397 (quoting Corcoran v. N.Y. Power Auth., 202 F.3d at 545) (citation omitted). To the contrary, except for plaintiffs' claim for an accounting, plaintiffs' causes of action all allege identical injuries. Accordingly, any fraud potentially underlying plaintiffs' fiduciary claims is merely incidental to those claims and therefore is insufficient to render those claims timely by triggering New York's six-year statute of limitations.

In sum, the breach of fiduciary duty claims are subject to a three-year limitations period. And because plaintiffs indisputably first asserted those claims more than three years after defendants' alleged breach, the claims are dismissed as untimely.

B. Conversion

Plaintiffs' conversion claim also is time-barred.

New York imposes a three-year statute of limitations for conversion claims. See Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 262–63 (S.D.N.Y. 2008) (citations omitted). Typically, a claim for conversion "accrues on the date of the actual conversion." Id. (collecting cases). However, plaintiffs, invoking equitable estoppel, argue the three-year limitations period instead began when plaintiffs "discovered the facts upon which the right [to demand return of the allegedly converted property] depends." (Opp. Br. at 23 (quoting Bernstein v. La Rue, 120 A.D.2d 476, 477 (2d Dep't 1986) (quoting N.Y. C.P.L.R. § 206(a)(1))).

Even assuming for argument's sake that the limitations period for plaintiffs' conversion claim did not begin until plaintiffs learned of defendants' alleged conversion, the claim still is untimely. According to the amended complaint, defendants diverted Empire's mortgage payments "on and after June 1, 2012." (Am. Compl. ¶ 23). The amended complaint further alleges that "on and after June 15, 2012," plaintiffs demanded defendants use Empire's rent payments to pay down Important's mortgage, and that "between June 16, 2012 and January 1, 2013," JPMorgan sent plaintiffs multiple notices to cure Important's mortgage default. (See id. ¶¶ 24–25, 27). Accordingly, plaintiffs had discovered the facts underlying the conversion claim by June 2012 (when plaintiffs first protested defendants' alleged conduct), and certainly by January 2013 (when JPMorgan notified plaintiffs of Important's default). Plaintiffs initiated the instant lawsuit on November 21, 2017—more than three years later. (Doc. #1).

Therefore, the conversion claim is untimely and must be dismissed.

C.   Legal Malpractice

Defendants argue Denise and Important's legal malpractice claim is subject to a three-year statute of limitations and must be dismissed as untimely. Plaintiffs disagree, contending the three-year limitations period was tolled through November 2014 under the doctrine of continuous representation.

The Court declines to dismiss the malpractice claim at this stage.

A legal malpractice claim in New York is subject to a three-year limitations period that begins running when the alleged malpractice occurred. See Tenamee v. Schmukler, 438 F. Supp. 2d 438, 443 (S.D.N.Y. 2006) (citations omitted). "However, under the 'continuous representation doctrine,' the statute of limitations is tolled for as long as 'there is a mutual understanding' between attorney and client 'of the need for further representation on the specific

subject matter underlying the malpractice claim.'" Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP, 834 F. Supp. 2d 141, 155 (E.D.N.Y. 2011) (quoting McCoy v. Feinman, 99 N.Y.2d 295, 306 (2002)) (citation omitted). In other words, the limitations period does not start running "until the attorney ceases representing the client in the specific matter at issue." Nobile v. Schwartz, 56 F. App'x 525, 526 (2d Cir. 2003) (summary order) (citing Shumsky v. Eisenstein, 96 N.Y.2d 164, 167–68 (2001)).

"[T]o invoke the continuous representation doctrine, [a] plaintiff must demonstrate clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney." Bryant v. Monaghan, 2016 WL 11272143, at *11 (S.D.N.Y. Dec. 16, 2016) (internal quotation marks and citation omitted), report and recommendation adopted sub nom. Bryant v. Silverman, 2017 WL 887043 (S.D.N.Y. Mar. 6, 2017). The doctrine "cannot be used to toll the statute of limitations after the relationship of trust and confidence ends." Id. (citations omitted). "When there is a question of fact regarding the application of the continuous representation doctrine[,] defendant's motion to dismiss based on the statute of limitations must be denied." Calcutti v. SBU, Inc., 224 F. Supp. 2d at 699 (citing Corless v. Mazza, 295 A.D.2d 848, 849 (3d Dep't 2002)).

The amended complaint specifically alleges defendants continuously represented Denise and Important through November 21, 2014, "in connection with the collection of rent" on the property, Important's mortgage default, "and other business and financial matters involving" Important and Denise. (Am. Compl. ¶ 32).

Here, whether defendants continuously represented Denise and Important through November 2014 presents a factual question unsuited for resolution at the motion to dismiss stage. Cf. Calcutti v. SBU, Inc., 224 F. Supp. 2d at 699 (citing Corless v. Mazza, 295 A.D.2d at 849).

14

Because this question is "better addressed on a more complete record at the summary judgment stage or at trial," the Court denies defendants' motion to dismiss the malpractice claim as untimely, without prejudice to renewal upon completion of discovery. See Szulik v. Tagliaferri, 966 F. Supp. 2d 339, 373 (S.D.N.Y. 2013).

IV. Important Properties

Defendants argue Important's legal malpractice and accounting claims must be dismissed for lack of standing or under the doctrine of judicial estoppel, because the Bankruptcy Court schedule itemizing Important's assets did not list any of Important's legal claims in the instant case. Plaintiffs concede the bankruptcy schedule did not list Important's claims but argue the appropriate remedy is a stay permitting Important to seek to reopen its bankruptcy proceeding and amend the schedule.

The Court agrees with plaintiffs that Important should be afforded an opportunity to reopen its bankruptcy proceeding. Accordingly, the Court dismisses Important's legal malpractice and accounting claims without prejudice to the right of Important's bankruptcy estate to seek Important's rejoinder in the instant case.

The commencement of a bankruptcy proceeding creates a bankruptcy estate that "encompasses, inter alia, with few exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 484 (2d Cir. 2014) (quoting 11 U.S.C. § 541(a)(1)) (emphasis omitted) (collecting cases). "[S]uch interests include causes of action possessed by the debtor" at the time of the bankruptcy petition's filing, id. (citations omitted), including any legal claims that accrued before the bankruptcy began, even if those claims had not yet been asserted in court, see Taylor v. Fin. Recovery Servs., Inc., 252 F. Supp. 3d 344, 349–50 (S.D.N.Y. 2017) (citations omitted).

15

A debtor in bankruptcy must file a schedule disclosing all assets belonging to the bankruptcy estate. See Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (citing 11 U.S.C. § 521(a)(1)(B)(i), (iii)). "Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system," an asset the debtor fails to disclose remains property of the bankruptcy estate—and does not revert to the debtor—even after the bankruptcy case is closed. Id. Thus, "a debtor who fails to properly schedule a legal claim may be barred" under the doctrines of standing and judicial estoppel "from asserting that claim after the close of the bankruptcy case." Taylor v. Fin. Recovery Servs., Inc., 252 F. Supp. 3d at 350 (citations omitted).

Important indisputably failed to schedule in bankruptcy the claims it now pleads in the instant case. The parties agree Important therefore lacks standing to pursue its claims, though they disagree whether judicial estoppel independently bars Important from asserting them.

The Court need not resolve the estoppel issue, because it concludes Important's claims should be dismissed without prejudice so that Important may seek to reopen its bankruptcy proceeding and enable its bankruptcy estate to decide whether to pursue its claims against defendants. Dismissing those claims at this stage would generate a potential windfall for defendants and would deprive Important's creditors of the opportunity to benefit from any damages the bankruptcy estate might recover for defendants' allegedly tortious conduct. Because "[t]he only parties benefiting from the absence of a stay are those accused of violating" the law, staying the instant case and permitting Important to seek to reopen the bankruptcy proceeding is "[t]he 'most sensible solution.'" BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC, 2015 WL 6143702, at *10 (S.D.N.Y. Oct. 19, 2015) (quoting Greenhart Durawoods, Inc. v. PHF Int'l Corp., 1994 WL 652434, at *4–5 (S.D.N.Y. Nov. 18, 1994) (quoting Stein v. United Artists

16

Corp., 691 F.2d 885, 893 (9th Cir. 1982))), aff'd on other grounds, 859 F.3d 188 (2d Cir. 2017); see Rosenshein v. Kleban, 918 F. Supp. 98, 103 (S.D.N.Y. 1996) (collecting cases). Notably, any successful claims asserted by the bankruptcy estate would benefit Important's creditors, not Important itself: a debtor in bankruptcy cannot pursue an undisclosed legal claim for its own benefit. Rosenshein v. Kleban, 918 F. Supp. at 103 (citations omitted).

Accordingly, the Court dismisses Important's legal malpractice and accounting claims without prejudice. Should Important's bankruptcy estate seek to pursue those claims, the Court will entertain an application to rejoin Important in this case.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Denise Meskunas's legal malpractice claim and John and Denise Meskunas's claim for an accounting shall proceed.

Important Properties's legal malpractice claim and claim for an accounting are DISMISSED WITHOUT PREJUDICE.

All other claims are DISMISSED.

By March 5, 2019, defendants shall file an answer to the amended complaint.

The Clerk is directed to (i) terminate the motion (Doc. #24), and (ii) terminate plaintiff Important Properties, LLC.

Dated: February 19, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge