UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN A. MESKUNAS, DENISE MESKUNAS
and IMPORTANT PROPERTIES, LLC,

                        Plaintiffs,

          -against-

LEE DAVID AUERBACH, ESQ. and
LEE DAVID AUERBACH, P.C.,

                       Defendants.
------------------------------------------------------------X

**ORDER**

17 Civ. 9129 (VB)(JCM)

      Presently before the Court is Plaintiffs' motion to prevent the disclosure of communications between Plaintiffs and their former attorneys on the grounds that the communications are protected by the attorney-client privilege and/or the work product doctrine. (Docket No. 93) ("Pl. Ltr.").  The communications in question are between Plaintiff Denise Meskunas and her former matrimonial attorney, Linda Eichen, Esq. ("Eichen"), and Plaintiffs Denise and Jack Meskunas and their former bankruptcy attorneys, principally, Jonathan Pasternak ("Pasternak") from DelBello Donnellan Weingarten Wise & Wiederkehr, LLP ("DelBello"). (Docket Nos. 93-95).  Defendants oppose the motion and argue that regardless of whether these documents are protected by the attorney-client privilege or the work product doctrine, Plaintiffs waived the privilege by putting the subject matter of the communications at issue in the present litigation. (Docket No. 95) ("Def. Ltr.").

## I. FACTUAL BACKGROUND

      In 2004, John and Denise Meskunas created Important Properties, LLC ("Important Properties") to purchase, own and operate a commercial property located at 8 Industrial Lane, New Rochelle, New York ("New Rochelle Property"). (Docket No. 23 ¶ 14).  Important

Properties owned the New Rochelle Property subject to a $5,500,000.00 mortgage ("Mortgage"), which was personally guaranteed by Jack and Denise Meskunas. (*Id.* ¶ 15).  The New Rochelle Property was improved by a 27,000 square foot commercial building and was leased to a Harley Davidson Motorcycle dealership ("Lease") in February 2012. (*Id.* ¶ 17).  Under the Lease, Important Properties received $35,000.00 per month in rent, which was scheduled to increase by 3% each year of the Lease term. (*Id.* ¶ 18).

In March 2012, the parties commenced "a contentious martial litigation consisting of a Family Court Action brought in the Family Court of New Rochelle, as well as an action for divorce" before the Supreme Court of Westchester County (collectively, "Marital Proceedings"). (*Id.* ¶ 19).  Denise Meskunas was represented by Eichen in the Marital Proceedings. (Def. Ltr. at 1).  Eichen subsequently referred Ms. Meskunas to Defendant, Lee David Auerbach, Esq. ("Auerbach"), the principal of Lee David Auerbach, P.C. (collectively, "Defendants"), to represent Ms. Meskunas and Important Properties, of which Ms. Meskunas purported to be the majority owner, in connection with financial and business matters relevant to the Marital Proceedings. (*Id.* at 2).

Plaintiffs allege that on or around March 2012, the Family Court of New Rochelle ordered that Defendants be appointed receiver and custodian of rents payable to Important Properties under the Lease, with the direction that such rents be applied to the Mortgage ("Family Court Order"). (Docket No. 23 ¶ 21).  Plaintiffs aver that the Family Court Order was extended by the Supreme Court of Westchester County on July 20, 2012 ("Supreme Court Order"). (*Id.* ¶ 22).  Plaintiffs further maintain that on and after June 1, 2012, Defendants ceased applying the rents to the Mortgage and retained or redirected the rents to third parties, in violation of the aforementioned Orders. (*Id.* ¶ 23).

On January 31, 2013, after receiving several notices to cure, Plaintiffs were notified that they were in default on the Mortgage. (*Id.* ¶ 27). The mortgagor initiated foreclosure proceedings against Plaintiffs on June 28, 2013, (*id.* ¶ 30), and summary judgment was granted in the mortgagor's favor on June 4, 2014, (*id.* ¶ 31).

Thereafter, on January 28, 2015, Plaintiff Important Properties initiated bankruptcy proceedings before the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Proceeding"), resulting in a temporary stay of the auction of the New Rochelle Property. (*Id.* ¶ 33). Plaintiffs were represented by DelBello in the Bankruptcy Proceeding. (Def. Ltr. at 2). On October 17, 2016, the bankruptcy court approved the sale of the New Rochelle Property for $6,500,000.00. (Docket No. 23 ¶ 33). The property was sold on November 16, 2016 and the Bankruptcy Proceeding was dismissed. (*Id.*).

On November 21, 2017, Plaintiffs commenced the present action against Defendants for, *inter alia*, legal malpractice. (Docket No. 1). Plaintiffs filed an amended complaint on April 23, 2018. (Docket No. 23). Defendants moved to dismiss the complaint, which was granted in part. (Docket No. 24). Plaintiffs' legal malpractice and accounting claims proceeded, (*id.*), and the parties commenced discovery.

During discovery, Defendants served third-party subpoenas on Eichen and DelBello seeking documents related to the Marital and Bankruptcy Proceedings. Eichen's attorney, Candace Ratner, Esq., produced all non-privileged documents relating to her representation of Denise Meskunas, accompanied by a privilege log, which included approximately 2,400 pages marked as privileged. (Pl. Ltr. at 4). DelBello produced all of its non-privileged documents relating to the foreclosure action, accompanied by a privilege log, which included approximately 3,000 pages marked as privileged. (*Id.*).

The parties have agreed on the status of the majority of the withheld documents. Plaintiffs now move for a protective order to ensure that the documents they have not agreed on, which are identified in Plaintiffs' Exhibit A ("Eichen Communications"), (Docket No. 94-1), and Exhibit B ("DelBello Communications"), (Docket No. 94-2), remain confidential. The Eichen and DelBello Communications were submitted to the Court for *in camera* review.

## II.  LEGAL STANDARDS

### A.  Attorney-Client Privilege

"[I]n a diversity case, the issue of privilege is . . . governed by the substantive law of the forum state, here, New York." *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975). New York law governing attorney-client privilege is defined by C.P.L.R. § 4503 which protects "confidential communication[s] made between the attorney . . . and the client in the course of professional employment" from disclosure. N.Y. C.P.L.R. § 4503(a)(1).  The party asserting privilege carries the burden of establishing "that the communication at issue was between an attorney and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship;'" that the communication "is predominantly of a legal character;" and that the communication was confidential. *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 36 N.Y.S.3d 838, 842-43 (2016) (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 542 N.Y.S.2d 508, 511 (1989)).  "[W]hether a particular document is or is not protected [by the attorney-client privilege] is necessarily a fact specific determination . . . most often requiring in camera review," and left to the discretion of the trial court. *Charter One Bank, F.S.B. v. Midtown Rochester, LLC*, 738 N.Y.S.2d 179, 184 (quoting *Spectrum Sys. Intl. Corp. v. Chemical Bank*, 78 N.Y.S.2d 809, 814 (1991)).

Furthermore, the attorney-client privilege is not absolute, and may be set aside "where strong public policy requires disclosure." *Priest v. Hennessy*, 431 N.Y.S.2d 511, 514 (1980).

Relatedly, a client can waive the privilege by voluntarily disclosing a significant part of the matter or communication. *See Bowne v. New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 478 (S.D.N.Y. 1993).  Waiver typically compels "the production of other documents protected by the privilege which relate to the same subject" matter. *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 756 N.Y.S.2d 367, 378 (Sup. Ct. N.Y. Cty. 2003) (quoting *In Re George Baker Jr.*, 528 N.Y.S.2d 470, 473 (Sup. Ct. Nassau Cty. 1988)).  "Just as the party asserting privilege has the burden of establishing it, that party 'also bears the burden of demonstrating that it has not been waived.'" *Cicel (Beijing) Sci. & Tech. Co., Ltd. v. Misonix, Inc.*, 331 F.R.D. 218, 229 (E.D.N.Y. 2019) (quoting *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009)).

New York courts recognize "at issue" waiver, which occurs "where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information." *Deutsche Bank Tr. Co. of Ams. v. Tri-Links Inv. Tr.*, 837 N.Y.S.2d 15, 23 (1st Dep't 2007); *accord Orco Bank*, *N.V. v. Proteinas Del Pacifico, S.A.*, 577 N.Y.S.2d 841, 842 (1st Dep't 1992) (affirming waiver of attorney-client privilege where plaintiff placed advice of counsel at issue and selectively disclosed portions of counsel's advice to explain its decision to underwrite a loan that it later discovered was based on false representations).  "Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the communication itself 'at issue' in the lawsuit[.]" *Id.*

Courts typically find at issue waiver when: (1) a client selectively discloses portions of the attorney-client communication, *see, e.g.*, *Vill. Bd. of Pleasantville v. Rattner*, 515 N.Y.S.2d

585, 586 (2nd Dep't 1987) ("a party may not rely on the protection of the privilege regarding

damning communications while disclosing other self-serving communications"); (2) "a client

places the attorney-client relationship directly at issue," *e.g.*, where a client's attack on his

attorney's conduct calls into question the substance of their communications, *see, e.g.*, *Graziose*

*v. U.S.*, No. 03 Civ. 8109(RWS), 2004 WL 102699, at *1 (S.D.N.Y. Jan. 21, 2004); or (3) "a

client asserts reliance on an attorney's advice as an element of a claim or defense," *see, e.g.*,

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, Nos. 93 Civ. 6876 (KMW), 94 Civ.

1317 (KMW), 1995 WL 598971, at *5 (S.D.N.Y. Oct. 11, 1995) (finding waiver where "the

subject of the privileged communications [was] central to" plaintiffs' ability to rebut defendants'

"reliance-on-advice defense."). *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008).  In all three

scenarios, the privileged communications are vital to the party asserting privilege's claim or

defense. *See Ambac Assur. Corp. v. DLJ Mortg. Capital, Inc.*, 939 N.Y.S.2d 333, 335 (1st Dep't

2012) ("Generally, no at issue waiver is found where the party asserting the privilege does not

need the privileged documents to sustain its cause of action.").  Thus, "[t]he assertion of an

'advice-of-counsel' defense has been properly described as a 'quintessential example' of" at

issue waiver. *Erie*, 546 F.3d at 228

      The rationale behind the at issue waiver doctrine is that a party should not be able to use

the privilege as both a sword and a shield. *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)

("a [party] may not use the privilege to prejudice his opponent's case or to disclose some

selected communications for self-serving purposes.").  Thus, waiver may be found outside of the

aforementioned scenarios if fairness so requires, (*see id.*), *e.g.*, if a party places "material facts at

issue related to the privileged communication," and the "validity of those facts can *only* be

accurately determined through" a review of the privileged communication, *Cicel*, 331 F.R.D. at 228 (emphasis added).

## B. Work-Product Doctrine

The work-product doctrine is governed by federal law. *See Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007).  The doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which provides that documents "prepared in anticipation of litigation or for trial" are subject to a qualified immunity from discovery. *See id.* (quoting Fed. R. Civ. P. 26(b)(3)).  The protection "applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation," *i.e.*, "if a party prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation." *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 304 (S.D.N.Y. 1991).  "The work-product privilege can also be waived under the 'at issue' doctrine." *Bolton v. Weil, Gotshal & Manges LLP*, 602341/03, 2004 WL 2239545, at *4 (Sup. Ct. N.Y. Cty. Sept. 10, 2004).

## III.  DISCUSSION

Upon review of the documents, the Court finds that the Eichen and DelBello Communications were made between counsel and their clients for the purpose of providing legal advice in the course of a professional relationship, and were both confidential and of a predominantly legal character. *See Ambac*, 36 N.Y.S.3d at 842-43.  The Communications are thus protected by the attorney-client privilege. *See id.*  The Court further finds that several of the DelBello Communications were prepared exclusively to assist in an ongoing litigation, triggering the work product protection. *See Martin*, 140 F.R.D. at 304.  The parties do not dispute that the attorney-client privilege and work-product doctrine apply to these documents; the issue before the Court is whether Plaintiffs have waived these protections by commencing the instant lawsuit.

A. **Eichen Communications**

Defendants argue that Plaintiffs placed the subject matter of the Eichen Communications at issue with regard to: (1) the handling of rents from the New Rochelle Property, and (2) the decision to default on the Mortgage, thus waiving any protection over the communications. (Def. Ltr. at 2).

First, Defendants allege that because Plaintiffs put the existence of Orders directing Defendants to act as rent receiver at issue, privilege is waived with respect to the Eichen Communications concerning "the collection and subsequent handling of monies payable to [P]laintiff Important Properties." (*Id.* at 2-3).

Defendants' argument fails. Plaintiff Denise Meskunas neither selectively disclosed portions of her communications with Eichen regarding Defendants' handling of rents from the New Rochelle Property, nor did she place her relationship with Eichen directly at issue by asserting that Defendants were ordered to act as rent receiver. *See Erie*, 546 F.3d at 228. Moreover, reliance on Eichen's advice is not an element of Plaintiffs' instant malpractice claim. *See id.* Thus, Denise Meskunas neither placed the subject matter of the Eichen Communications at issue, *see Deutsche Bank Tr. Co.*, 837 N.Y.S.2d at 23, nor is the substance of the Eichen Communications critical to the issue of whether Defendants were ordered to act as rent receiver, such that fairness would require their disclosure, *see Bilzerian*, 926 F.2d at 1292. Additionally, there are other sources of direct proof Defendants can rely on to ascertain the existence of the Orders. For example, Plaintiffs provided information about the Orders in their Amended Complaint, including the issuing court, judge and date of the Supreme Court Order, and the issuing court and approximate date of the Family Court Order. (Docket Nos. 23 ¶¶ 21-22). Consequently, Plaintiffs have not waived their privilege with respect to the Eichen Communications concerning Orders directing Defendants to act as rent receiver.

Second, Plaintiffs allege that Auerbach advised Denise Meskunas to default on the Mortgage during the Marital Proceedings. (Def. Ltr. at 2).  Defendants aver that privilege is thus waived with respect to the Eichen Communications concerning "the facts and circumstances surrounding the [P]laintiffs' decision to default on the Mortgage, and communications relating to each of the [P]laintiffs' financial conditions at that time." (*Id.*).  The Court agrees that by placing Auerbach's advice at issue, Plaintiffs waived their privilege regarding any advice they received from other counsel, including Eichen, on whether to default on the Mortgage, because such advice "bears on the issue of reasonable reliance." *See In re Gaming Lottery Securities Litig.*, No. 96 Civ. 5567 (RPP), 2000 WL 340897, at *3 (S.D.N.Y. Mar. 30, 2000); *accord Erie*, 546 F.3d at 228.  Since Plaintiffs' malpractice claim rests on the supposition that they relied on Defendants' negligent advice, "legal advice they received from any other lawyers *on that subject* relates to the reasonableness of [Plaintiffs'] reliance [on Defendants' advice] and is not subject to the attorney/client privilege." *In re Gaming Lottery Securities Litig.*, 2000 WL 340897, at *3 (emphasis added).  Thus, fairness requires that the Eichen Communications regarding Plaintiffs' decision to default on the Mortgage be disclosed to Defendants. *See id*.  However, the communications in Exhibit A do not include any advice from Eichen regarding defaulting on the Mortgage.

Further, to the extent the Eichen Communications discuss Plaintiffs' financial condition at the time of the default, Plaintiffs have not placed the subject matter of such communications at issue by bringing the instant action.  Accordingly, the Eichen Communications are not subject to disclosure, nor can their contents be probed during Eichen's deposition.

**B. DelBello Communications**

Defendants also argue that Plaintiffs waived their privilege over certain communications with Pasternak and other attorneys retained by Plaintiffs during the Bankruptcy Proceeding. (Def. Ltr. at 3).  Specifically, Defendants argue that communications with Pasternak regarding "plaintiffs' finances, valuation and sale of the [New Rochelle] property, the scheduling of assets iu [sic] the Bankruptcy, [P]laintiffs' ability to refinance or retain the Mortgage, and the decision not to schedule any alleged potential claim against the [D]efendants," are directly relevant to Plaintiffs' claims and Defendants' defenses and are subject to disclosure. (*Id.*).

First, Plaintiffs did not waive their privilege over the DelBello Communications concerning their financial condition by bringing the present action.  The "only . . . type of unfairness to the adversary" remedied by the at issue waiver doctrine is the unfairness "that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Erie*, 546 F.3d at 229.  Such circumstances are not present here. Plaintiffs' legal malpractice claim is not predicated on privileged communications concerning Plaintiffs' financial condition.  Nor have Plaintiffs otherwise used the subject matter of their communications with DelBello attorneys regarding their finances to gain a litigation advantage. Additionally, facts concerning Plaintiffs' financial condition at the time of the default can be ascertained without examination of the privileged communications, such as during Plaintiffs' depositions or through other paper discovery methods.

Second, Plaintiffs have not placed at issue the DelBello Communications regarding Plaintiffs' decision to schedule the instant legal malpractice claim as an asset in the Bankruptcy Proceeding.  The fact that Plaintiffs may have received advice from their former attorneys on the

validity of the malpractice claim brought in the instant suit is insufficient to waive privilege with respect to those communications. *Cf Jakobleff v. Cerrato, Sweeney and Cohn*, 468 N.Y.S.2d 895, 898 (2nd Dep't 1983) (privilege was not waived over communications between plaintiff and her present attorney, despite the fact that "[b]y bringing an action against her former attorneys for legal malpractice, plaintiff . . . placed her damages in issue, and defendants . . . assert[ed] a third-party claim for contribution against the present attorney[…]  To conclude otherwise would render the privilege illusory in all legal malpractice actions").  Accordingly, to the extent the DelBello Communications discuss Plaintiffs' financial condition or the decision to schedule a potential malpractice claim as an asset, these communications are privileged and are neither subject to disclosure nor proper topics of questioning during Plaintiffs' depositions.

## C.  Statute of Limitations

Finally, Defendants contend that communications regarding "the timing of [D]efendants' representation of the [P]laintiffs, as well as [P]laintiffs' termination of [D]efendants and retention of new counsel" are vital to Defendants' statute of limitations defense, and should thus be disclosed. (Def. Ltr. at 3).  Although communications regarding the timing of Defendants' representation are relevant to Defendants' statute of limitations defense, at issue waiver is inappropriate here, *see Deutsche Bank Tr Co.*, 837 N.Y.S.2d at 23, since Plaintiffs have not placed the subject matter of the DelBello Communications regarding the timing of their malpractice claim at issue in a way that unfairly utilizes the attorney-client privilege, *see Erie*, 546 F.3d at 229.  Moreover, this information can be obtained through other means, such as Plaintiffs' depositions.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is granted.  The Clerk is respectfully

requested to terminate the pending motion (Docket Nos. 93 and 95).

Dated:    December 30, 2020
          White Plains, New York

**SO ORDERED:**

JUDITH C. McCARTHY
United States Magistrate Judge