UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DENISE MESKUNAS and JOHN A.          :
MESKUNAS,                            :
                    Plaintiffs,      :
v.                                   :          **<u>OPINION AND ORDER</u>**
                                     :
                                     :          17 CV 9129 (VB)
LEE DAVID AUERBACH, ESQ., and LEE    :
DAVID AUERBACH, P.C.,                :
                    Defendants.      :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiffs Denise Meskunas and John A. Meskunas bring this action against defendants Lee David Auerbach, Esq., and Lee David Auerbach, P.C., asserting claims of legal malpractice and for an accounting.

Now pending is defendants' motion for summary judgment.  (Doc. #115).

For the following reasons, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

The parties have submitted memoranda of law, declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

I.    <u>Plaintiffs' Marriage, Divorce, and Real Estate Business</u>

Plaintiffs Denise Meskunas ("Denise") and John A. Meskunas ("John") were a married couple, and at all relevant times, in the process of a protracted divorce proceeding.  Plaintiffs were also co-members of Important Properties, LLC ("Important LLC"), an entity that owned commercial property at 8 Industrial Lane, New Rochelle, New York (the "Property").  Important LLC leased the Property to a Harley Davidson motorcycle dealership, and plaintiffs, in turn, used

the rental payments from the dealership to make Important LLC's mortgage payments on the

Property.  John and Denise personally guaranteed Important LCC's mortgage obligations.

II.   <u>Auerbach's Representation of Denise (March 2012 to June 2013)</u>

During the course of plaintiffs' divorce, Denise retained defendants Lee David Auerbach,

Esq., and his law firm, Lee David Auerbach, P.C., to represent her in both her individual

capacity and her capacity as member of Important LLC for a wide range of issues, including

Denise's personal and corporate obligations with respect to the mortgage.

In or around April 2012, Auerbach began collecting the monthly rent payments from the

Harley Davidson dealership—on behalf of Denise and Important LLC—to pay the Property's

monthly mortgage payments.  Although the parties dispute the origins and parameters of this

arrangement, documents reflect that by July 20, 2012, the Supreme Court, Westchester County—

the court hearing plaintiffs' matrimonial proceeding at the time—acknowledged that this

arrangement had already been in place for April and May 2012, and ordered that the arrangement

continue pending further order of the court.

However, by the time of that order, Auerbach had already recommended to Denise that

she discontinue making payments on the Property's mortgage, beginning in June 2012.

Accordingly, from June 2012 to August 2013, Auerbach collected fifteen monthly rent checks

from the Harley Davison dealership, yet failed to use any of that rent money to pay the

Property's monthly mortgage payments.  Instead, Auerbach gave each of the fifteen checks

directly to Denise, who in turn, used the rent money for her various personal expenses, including

paying the legal fees owed to Auerbach.

By June 2013, Important LLC had defaulted on its mortgage obligations, and an assignee

of the mortgagee—Colfin Metro Funding ("Colfin")—initiated a foreclosure action against

Important LLC, as well as against John and Denise in their individual capacities as guarantors (the "Foreclosure Action").

The instant legal malpractice claim arises out of Auerbach's alleged failure to advise Denise that failure to make Important LLC's mortgage payments would result in a default on the mortgage and personal liability for Denise.  The instant claim for an accounting seeks an accounting of the fifteen rent checks delivered to Auerbach by the Harley Davidson dealership.

III.    Auerbach's Termination and Subsequent Services for Denise (July 2013 to November 2014)

Shortly before the commencement of the Foreclosure Action in June 2013, Denise and Auerbach agreed to terminate Auerbach's "advice and counsel in connection with that certain foreclosure proceeding referable to [the Property]," as memorialized in a letter sent from Auerbach's firm dated June 11, 2013 (the "Termination Letter").  (Doc. #117-8).  Shortly thereafter, Denise retained new counsel, Ira Clair, Esq., to represent her in the Foreclosure Action.

From July 2013 through November 2014, Denise was continuously and exclusively represented in the Foreclosure Action by Mr. Clair.  During this time, the parties to the Foreclosure Action, including Denise, briefed a motion for summary judgment, which Denise and the other defendants to the action lost, and then continued to litigate a judgment for foreclosure and personal liability, among other things.  During the same time, Auerbach provided certain limited, discrete services for Denise, in both her individual capacity and as a member of Important LLC, regarding matters unrelated to the Foreclosure Action.  Auerbach did not communicate with or otherwise render services for Denise regarding any aspect of the Foreclosure Action during this time.

On November 14, 2014, Denise forwarded to Auerbach the terms of a proposed settlement agreement regarding the Foreclosure Action that Clair had negotiated with counsel for Colfin, among others (the "Settlement Stipulation").  The Settlement Stipulation contemplated that Denise would surrender to Colfin a portion of her anticipated divorce settlement in exchange for resolution of the Foreclosure Action.  Auerbach replied to Denise's email shortly thereafter, noting, "apparently you had other counsel handling this matter for sometime."  (Doc. #117-13). Auerbach also cautioned Denise that he "need[ed] to speak with [Denise's divorce attorney, Linda Eichen] to get a lay of the land scape before [he had] a substantive conversation with [Denise]."  (Id.).

An invoice from Auerbach's firm reflects that Auerbach billed Denise for a limited number of "professional services" rendered in the days following this email exchange, from November 17 through November 21, 2014, totaling 3.5 hours.  These services included: (i) seven telephone conferences with Ira Clair, Linda Eichen, and Denise (either alone or in some combination), all regarding the Foreclosure Action; (ii) "review[ing] files for defense positions"; (iii) "review[ing] emails"; and (iv) "attention to" the Settlement Stipulation.  (Doc. #117-14).

On November 21, 2014, Denise called Clair's firm and left a message with his receptionist.  A note from the receptionist relaying Denise's message stated that, "upon advice of counsel, not signing stip."  (Doc. #123-11 at ECF 6).[1]

By sworn declaration, Auerbach denies ever representing or advising Denise regarding the Foreclosure Action at any point following his delivery of the Termination Letter on June 11, 2013, and he denies providing any advice to Denise on whether she should sign the Settlement

---

[1]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Stipulation.  Auerbach claims his services in November 2014 were limited to "provid[ing] [factual] information which [he] had obtained during the time [he] represented [Denise and Important LLC] prior to June 11, 2013."  (Doc. #116 ¶ 34).  Auerbach also testified during his deposition that his review of the Settlement Stipulation was similarly limited to answering "questions that [he] was asked by [Denise's] then matrimonial counsel and her then foreclosure counsel relating to the facts that exist[ed] prior to [his] termination."  (Doc. #123-1, at 246–47).

During her deposition, Denise could not recall any details regarding services rendered by Auerbach in November 2014 independent of the descriptions of those services in Auerbach's invoice.  Nor could Denise specifically recall Auerbach rendering any services respecting the Foreclosure Action that were not memorialized in Auerbach's invoices.

Plaintiffs commenced the instant action on November 21, 2017.

## DISCUSSION

I.   Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for [her]."  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Bald assertions, completely unsupported by

admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923

F.2d 18, 21 (2d Cir. 1991).

In deciding a motion for summary judgment, the Court need consider only evidence that

would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736,

746 (2d Cir. 1998).  However, the non-moving party need not "produce evidence in a form that

would be admissible at trial."  Celotex Corp. v. Catrett, 477 U.S. at 325.

II.     Legal Malpractice Claim

Defendants argue Denise's legal malpractice claim is barred by the statute of limitations

as a matter of law.

The Court agrees.

A.     Legal Standard

A legal malpractice claim governed by New York law[3] is subject to a three-year

limitations period that begins running when the alleged malpractice occurred.  See Tenamee v.

Schmukler, 438 F. Supp. 2d 438, 443 (S.D.N.Y. 2006).  "However, under the 'continuous

representation doctrine,' the statute of limitations is tolled for as long as 'there is a mutual

understanding' between attorney and client 'of the need for further representation on the specific

subject matter underlying the malpractice claim.'"  Protostorm, LLC v. Antonelli, Terry, Stout &

Kraus, LLP, 834 F. Supp. 2d 141, 155 (E.D.N.Y. 2011) (quoting McCoy v. Feinman, 99 N.Y.2d

295, 306 (2002)).

In other words, the limitations period does not start running "until the attorney ceases

representing the client in the specific matter at issue."  Nobile v. Schwartz, 56 F. App'x 525, 526

---

[3]     "The parties' briefs assume that New York law controls, and such implied consent ... is
sufficient to establish choice of law."  Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d
Cir. 2000).

(2d Cir. 2003) (summary order) (emphasis added) (citing <u>Shumsky v. Eisenstein</u>, 96 N.Y.2d 164, 167–68 (2001)).  Accordingly, "the doctrine is not applicable to a client's continuing general relationship with a lawyer . . . involving only routine contact for miscellaneous legal representation unrelated to the matter upon which the allegations of malpractice are predicated." <u>Shumsky v. Eisenstein</u>, 96 N.Y.2d at 168.

"[T]o invoke the continuous representation doctrine, [a] plaintiff must demonstrate clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney" regarding the specific subject matter underlying the malpractice claim.  <u>Bryant v. Monaghan</u>, 2016 WL 11272143, at *11 (S.D.N.Y. Dec. 16, 2016), <u>report</u> and <u>recommendation adopted</u> <u>sub</u> <u>nom</u>. <u>Bryant v. Silverman</u>, 2017 WL 887043 (Mar. 6, 2017).  When there is a question of fact regarding the application of the continuous representation doctrine, the defendant's motion for summary judgment based on the statute of limitations must be denied. <u>See</u> <u>Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP</u>, 834 F. Supp. 2d at 156.

"[T]o suffice for tolling the statute, the end of the relationship of trust must be evinced by some outward manifestation by either client or attorney."  <u>Esposito v. Gary</u>, 844 F. App'x 448, 449 (2d Cir. 2021) (summary order).  Accordingly, "even when further representation concerning the specific matter in which the attorney allegedly committed the complained of malpractice is needed and contemplated by the client, the continuous representation toll would nonetheless end once the client is informed or otherwise put on notice of the attorney's withdrawal from representation."  <u>Shumsky v. Eisenstein</u>, 96 N.Y.2d at 170–71.  And when a plaintiff fails to adduce sufficient evidence to "diminish the objective effect of [such] a withdrawal," summary judgment must be granted.  <u>See</u> <u>Diamond v. Sokol</u>, 468 F. Supp. 2d 626, 642 (S.D.N.Y. 2006), <u>reconsideration granted on other grounds</u>, 2007 WL 9815944 (May 18,

2007).

B.    Analysis

Here, no reasonable juror could find that Auerbach's representation of Denise in the Foreclosure Action was "ongoing, continuous, developing, and dependent" up to and including November 2014, which places Denise's legal malpractice claim outside of the statute of limitations.  Bryant v. Monaghan, 2016 WL 11272143, at *11.

As an initial matter, defendants have shown there is no genuine issue of material fact that, absent additional tolling, the statute of limitations governing Denise's legal malpractice claim began to run on June 11, 2013, the date of the Termination Letter, more than three years before plaintiffs commenced the instant action.  Indeed, it is undisputed that Denise's malpractice claim arises out of Auerbach's alleged failure to advise Denise of the consequences of failing to make Important LLC's mortgage payments, including the possibility of foreclosure.  Accordingly, Auerbach's initial representation of Denise in the Foreclosure Action "pertains specifically to the matter in which [he] allegedly committed the alleged malpractice," and Denise's time to file a legal malpractice claim under the statute of limitations would thus not begin to run until she was "informed or otherwise put on notice of [Auerbach's] withdrawal from that representation." Shumsky v. Eisenstein, 96 N.Y.2d at 170–71.  There is, in turn, no genuine issue of material fact that Denise was put on notice of the end of Auerbach's representation in the Foreclosure Action by the express terms of the Termination Letter.

Denise, on the other hand, fails to satisfy her burden to evince a genuine issue of material fact as to the tolling of the statute of limitations.

First, Denise fails to show a genuine issue of material fact respecting her receipt of the Termination Letter.  Although plaintiffs' counsel offers evidence that Denise never received a

hard copy of the Termination Letter, Denise nevertheless admitted during her deposition to receiving and reviewing the letter.  (See, e.g., Doc. #117-15 at 49-50 ("I know I received a letter that looked like this.")).

Second, although Denise offers evidence reflecting certain legal services that Auerbach rendered for Denise during the time period between the Termination Letter and the November 2014 telephone calls, this type of "continuing general relationship involving routine contact for miscellaneous legal representation" unrelated to the subject matter of the malpractice claim is insufficient to invoke the continuous representation doctrine as a matter of law.  Shumsky v. Eisenstein, 96 N.Y.2d at 168.

Third, Denise fails to show that any of the services Auerbach provided in connection with the Foreclosure Action in November 2014 involved the type of "substantive legal work" necessary to invoke the continued representation doctrine as a matter of law.  See Knobel v. Wei Grp., LLP, 160 A.D.3d 409, 410 (1st Dep't 2018).  Indeed, plaintiffs' counsel offers no direct evidence controverting Auerbach's sworn statements that his services during this time were limited to answering questions from Ira Clair and Linda Eichen regarding facts that pre-dated his termination in the Foreclosure Action.  See Rupolo v. Fish, 87 A.D.3d 684, 685 (2d Dep't 2011) ("[T]he [mere] fact that the defendants received a telephone call from the plaintiffs' new counsel . . . during which the defendants provided requested information to new counsel, does not toll the running of the statute of limitations until that date.").

Plaintiffs' counsel submits that, to the contrary, it is at least disputed whether Auerbach was the unidentified "counsel" who, according to a telephone message from Denise transcribed by a receptionist at Clair's law firm, advised Denise not to sign the Settlement Stipulation.  (Doc.

#123-11 at ECF 6).[4]  However, such a conclusion lacks any support from Denise herself, who testified she could not recall any specific details regarding her conversations with Auerbach in November 2014 beyond the descriptions of those conversations in her billing invoice.  In light of Denise's inability to recall such legal advice from Auerbach and Auerbach's sworn statements to the contrary, no reasonable juror could infer that Auerbach was, in fact, the attorney identified in the phone message absent the type of "unsubstantiated speculation" that cannot be considered on a motion for summary judgement.  Brown v. Eli Lilly & Co., 654 F.3d at 358.

Finally, even assuming, arguendo, that Auerbach indeed advised Denise against signing the Settlement Stipulation, plaintiffs' counsel supplies no evidence showing that this advice was part of a "continuous, ongoing," and uninterrupted course of representation.  Cf. Red Zone LLC v. Cadwalader, Wickersham & Taft LLP, 27 N.Y.3d 1048, 1049 (2016) (gap in between two periods of purported representation raised triable issues of fact due to the "absence of any clear delineation of the period[s] of" representation).  To the contrary, the record here reflects a clear delineation of the period between the June 11, 2013, Termination Letter and the November 14, 2014, email from Denise reinitiating contact with Auerbach, whereby (i) Denise retained Ira Clair, who continuously and exclusively represented Denise throughout the remainder of the Foreclosure Action; (ii) Auerbach never communicated with Denise regarding the Foreclosure Action; and (iii) upon re-initiation of contact in November 2014, Auerbach expressly cautioned that he needed to get a "lay of the land" because Denise had retained Clair "for sometime." (Doc. #117-13).  Taken together, this intervening conduct (or lack thereof), along with the

---

[4]     Counsel posits such advice "could only have come from Mr. Auerbach" because Clair was giving the opposite advice at the time; Denise's matrimonial attorney "was not advising [Denise] regarding the commercial litigation"; and Auerbach's invoice reflects that he had given "attention to [the] stipulation" the day prior to Denise's message and had conducted a "telephone conference with [Denise]" alone on the day she left the message.  (Doc. #120, at 13–14).

Termination Letter itself, precludes any finding that there was a single course of representation regarding the Foreclosure Action beyond June 11, 2013.  See also Pandozy v. Robert J. Gumenick, P.C., 2008 WL 2190151, at *3–4 (S.D.N.Y. May 23, 2008) (continuous representation doctrine did not apply to plaintiff's alleged re-hiring of defendant attorney for an appeal of litigation stemming from that defendant's alleged malpractice, where plaintiff had previously fired that defendant and hired other counsel in the interim).

Accordingly, because no rational trier of fact could find that the statute of limitations for Denise's legal malpractice claim should be tolled beyond June 11, 2013, that claim must be dismissed as untimely.

III.    Accounting Claim

Defendants argue plaintiffs' accounting claim must be dismissed because plaintiffs fail to show a genuine issue of material fact respecting Auerbach's release of each of the fifteen rent checks he received from the Harley Davidson dealership.

The Court agrees.

An accounting claim requires a defendant "to reveal his dealings."  Sang Lan v. Time Warner, Inc., 2014 WL 764250, at *4 (S.D.N.Y. Feb. 25, 2014).  To obtain an accounting under New York law, a plaintiff must show:  "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."  Gate Techs., LLC v. Delphix Cap. Mkts., LLC, 2013 WL 3455484, at *8 (S.D.N.Y. July 9, 2013).

"[T]he remedy of accounting is restitutionary by definition."  Ederer v. Gursky, 9 N.Y.3d 514, 525 (2007).  Accordingly, once a plaintiff establishes a right to an accounting, the Court

may then direct the "return [of any] pilfered funds in [the defendants'] possession," to which the plaintiff is entitled.  Roslyn Union Free Sch. Dist. v. Barkan, 16 N.Y.3d 643, 653 (2011); see also Ederer v. Gursky, 9 N.Y.3d at 525 ("[T]he plaintiff must establish some basis for the obligation to account, the defendant is ordered to account, and the plaintiff then gets an order directing payment of the sum of money found due.").

Here, it is undisputed that each of the fifteen rent checks Auerbach received from the Harley Davidson dealership are now properly accounted for.  Specifically, defendants offer, among other things, copies of the rent checks themselves, deposit slips, letters and memos of authorization from Denise, and responses to requests for admissions, all of which enable plaintiffs to trace the flow of the rent money from the Harley Davidson dealership to defendants and then to Denise herself.  Because plaintiffs are now able "to determine how the vast bulk of the [purportedly] stolen monies was used and the identity of the individuals who received the funds, there appears to be no need for an accounting."  Roslyn Union Free Sch. Dist. v. Barkan, 16 N.Y.3d at 653.

Plaintiffs suggest that a rational juror could find defendants improperly benefitted from the diversion of the rent checks in the form of the legal fees Auerbach collected from Denise, and the Court should therefore order defendants to return the purportedly "pilfered" funds.

However, even assuming defendants indeed improperly retained a portion of the rent money by way of their legal fees, no rational juror could find that the rent money was properly "due" to plaintiffs in the first instance.  Ederer v. Gursky, 9 N.Y.3d at 525.  To the contrary, the uncontroverted evidence reflects that defendants were ordered to use each of the rent checks they collected to make the monthly mortgage payments owed to the mortgagee.  Accordingly, to order that defendants now surrender whatever portion of the rent money they received in legal fees to

plaintiffs would run contrary to the restitutionary purpose of the accounting claim. <u>Cf</u>.

<u>McCaffery v. McCaffery</u>, 2012 WL 3260299, at *4 (E.D.N.Y. Aug. 8, 2012) (defendant not

entitled to accounting of rent payments paid to co-owner of a property because "the purpose of

[the co-ownership] was to enjoy any benefits from the Property's appreciation in value—not to

earn a profit from their mother's rental payments").  This is particularly true when, as here, one

of the plaintiffs improperly benefitted from the diversion of the rent checks herself.

Accordingly, plaintiffs' claim for an accounting must be dismissed.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #115) and close this case.

Dated: April 25, 2022
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge